United States Court of Appeals,

Eleventh Circuit.

No. 94-4947.

Irene J. DAMIANO, Plaintiff-Appellant,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Amerifirst
Bank, A Federal Savings Bank, successor in interest to Amerifirst
Federal Savings and Loan Association, Defendant-Appellee.

Jan. 29, 1997.

Appeal from the United States District Court for the Southern
District of Florida. (No. 90-8415 CIV-DLG) Donald L. Graham, Judge.

Before EDMONDSON and BIRCH, Circuit Judges, and FOREMAN[*], Senior
District Judge.

BIRCH, Circuit Judge:

This appeal presents the first impression issue in our circuit
of whether the plaintiff in a pre-receivership lawsuit must file an
administrative claim with the federal receiver of a failed
financial institution pursuant to the Financial Institutions
Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), Pub.L.
No. 101-73, 103 Stat. 183 (codified as amended in scattered
sections of 12 U.S.C.) when the receiver did not timely require
exhaustion of administrative remedies. The district court held
that it lacked subject matter jurisdiction over this
pre-receivership lawsuit and dismissed the case. Because we hold
that the receiver did not stay the action within ninety days of its
appointment as receiver and, thus, did not timely require
exhaustion of administrative remedies, we VACATE the district

[*]Honorable James L. Foreman, Senior U.S. District Judge for
the Southern District of Illinois, sitting by designation.

court's dismissal and REMAND for further proceedings.

## I. BACKGROUND

On September 27, 1990, plaintiff-appellant Irene J. Damiano brought this action against her former employer, Amerifirst Federal Savings and Loan Association ("Amerifirst"), for age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634. After the district court denied Amerifirst's motion to dismiss for failure to state a claim, Amerifirst filed an answer on February 27, 1991. Less than three weeks later, on March 15, 1991, Amerifirst was declared insolvent and the Resolution Trust Corporation ("RTC") was appointed its receiver.[1] On April 10, 1991, the RTC filed a motion to be substituted as the party defendant in this case.

On March 24, 1991, the RTC published a notice to claimants in local newspapers setting out an administrative claim procedure for the winding down of Amerifirst pursuant to FIRREA, 12 U.S.C. § 1821(d)(3)(B).[2] The notice advised Amerifirst's creditors that

---

[1]On December 31 1985, the RTC dissolved and the Federal Deposit Insurance Corporation ("FDIC") succeeded to the RTC as receiver. 12 U.S.C. § 1441a(m). To avoid confusion, however, we will consistently refer to the receiver as the RTC in this opinion.

[2]Section 1821(d)(3)(B) provides:

(B) Notice Requirements

The receiver, in any case involving the liquidation or winding up of the affairs of a closed depository institution shall—

(i) promptly publish a notice to the depository institution's creditors to present their claims, together with proof, to the receiver by a date specified in the notice which shall not be less than 90 days after the publication of such notice; and

they should file their claims with the RTC at its claims department in Tampa, Florida, within ninety days of the notice publication (i.e., before June 22, 1996). The RTC, however, did not mail the notice to Damiano or her lawyer as required by § 1821(d)(3)(C).[3]

---

(ii) republish such notice approximately 1 month and 2 months, respectively, after the publication under clause (i).

12 U.S.C. § 1821(d)(3)(B). The RTC complied with the republication requirements of clause (ii).

[3]Section 1821(d)(3)(C) provides:

(C) Mailing Required

The receiver shall mail a notice similar to the notice published under subparagraph (B)(i) at the time of such publication to any creditor shown on the institution's books—

(i) at the creditor's last address appearing in such books; or

(ii) upon discovery of the name and address of a claimant not appearing on the institution's books within 30 days after the discovery of such name and address.

21 U.S.C. § 1821(d)(3)(C). Damiano was a known creditor to the RTC by virtue of her pending suit and as evidenced by the fact that the RTC substituted itself as party defendant in April 1991.

Although Damiano mentioned in her brief that she did not receive a mailed notice of the RTC's claims process, she did not argue that the RTC's failure excused her from exhausting her administrative remedies. *See Greater Slidell Auto Auction v. American Bank & Trust Co.,* 32 F.3d 939, 942 (5th Cir.1994) (holding "that failure to provide [the plaintiffs] notice by mail violates their right to due process")(citing *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 317-20, 70 S.Ct. 652, 658-60, 94 L.Ed. 865 (1950)); *Whatley v. RTC,* 32 F.3d 905, 910 n. 1 (5th Cir.1994) (Duhé, J., concurring) (suggesting "that the receiver's very authority to determine claims [administratively] hinges on its compliance with the notice requirements"). Therefore, we do not address these arguments. We find it necessary, nonetheless, to correct the RTC's apparent ignorance of its statutory duties in this

Damiano did not comply with the administrative claim procedure described in the RTC's notice. She did, however, contact opposing counsel on several occasions in an effort to resolve her lawsuit out of court. Damiano first sent a settlement proposal to Amerifirst's counsel, David Rogero, on January 18, 1991. On March 28, 1991, Damiano sent a second letter to Rogero to confirm a telephone conversation which took place on March 20, 1991, and offered to provide any additional information that Rogero's "client" (the RTC at that time, arguably) might require to review the settlement proposal adequately. Rogero responded on April 11, 1991, and informed Damiano that the RTC had taken over Amerifirst and that he could not predict when the RTC would review and respond to her settlement proposal. Rogero later withdrew as defense counsel in November 1991.

After the claims bar date of June 22, 1991 passed, Damiano was informed that the RTC retained Jesse McCrary as its new counsel in connection with her lawsuit. Damiano sent a letter to McCrary on August 6, 1991, in which she reiterated her settlement proposal. She sent another letter to McCrary on October 9, 1991, to discuss

case. The RTC boldly stated in its motion to dismiss filed with the district court that

> [n]otwithstanding any suggestion to the contrary ..., it is not the RTC's burden to assure itself that potential claimants *find* and follow the correct administrative procedures. Rather, it is incumbent upon would-be claimants and their legal counsel to ascertain and comply with the necessary filing requirements, as the first step in "exhausting administrative remedies."

R1-45-7 (emphasis added). This statement is flatly contradicted by the mandatory language of § 1821(d)(3)(C).

the trial schedule.

On November 21, 1991, the RTC filed a motion to dismiss or, alternatively, for a stay pending exhaustion of administrative remedies. Damiano failed to respond to this motion and, on November 19, 1992, the district court dismissed the case without prejudice because it did not know whether Damiano had attempted to comply with the administrative process. Damiano filed a motion for reconsideration and for reinstatement of the action on December 28, 1992. The district court granted Damiano's motion and reinstated the action on April 8, 1993.[4] On February 25, 1994, the court placed the case on the trial calendar for June 27, 1994. The RTC filed a new motion to dismiss for lack of subject matter jurisdiction on June 16, 1994.

The district court dismissed the case. Citing *Brady Development v. RTC,* 14 F.3d 998, 1006 (4th Cir.1994) and *RTC v. Mustang Partners,* 946 F.2d 103, 106 (10th Cir.1991), the court held

---

[4]The RTC argues on appeal that the district court lacked subject matter jurisdiction to consider Damiano's motion because it should be deemed a motion to alter or amend judgment which was untimely under Fed.R.Civ.P. 59(e). *See Hertz Corp. v. Alamo Rent-A-Car, Inc.,* 16 F.3d 1126, 1129 (11th Cir.1994) (holding that the district court lacked subject matter jurisdiction over a motion to alter or amend judgment filed more than ten days after entry of the final judgment in violation of the time limitation of Rule 59(e)). We reject the RTC's argument because we conclude that the district court could have treated Damiano's motion as a motion for relief from judgment under Rule 60(b)(6), for which there is no strict time limitation of a jurisdictional nature. *See Nisson v. Lundy,* 975 F.2d 802, 806 (11th Cir.1992). Unlike the motion at issue in *Hertz,* which asked the court to *amend* a judgment of dismissal without prejudice to a dismissal with prejudice, Damiano's motion squarely asked the court to *relieve* it from the judgment in the interest of justice. The district court accepted Damiano's explanation for failing to respond to RTC's motion and reinstated the action. The district court did not abuse its discretion in doing so.

that FIRREA created a mandatory administrative exhaustion requirement for all claims, including those asserted in a pre-receivership lawsuit. The court then found that Damiano's correspondence with opposing counsel did not constitute compliance with the administrative claims procedures set out in the RTC's published notices[5] and, thus, concluded that Damiano forfeited her claim by failing to exhaust her administrative remedies. This appeal followed.

## II. DISCUSSION

We review *de novo* the district court's dismissal of the action for lack of subject matter jurisdiction and its interpretation of the statute. *Sims v. Trus Joist MacMillan,* 22 F.3d 1059, 1060 (11th Cir.1994). Damiano argues on appeal that the RTC has elected to proceed with her claim judicially, rather than administratively, by failing to timely request a stay of her lawsuit pending exhaustion of the administrative process.[6] *See*

---

[5]The court ruled that: (1) Damiano's letter dated January 18, 1991, was sent *before* the RTC became receiver and therefore could not qualify as an administrative claim; (2) Damiano's letters dated August 6, 1991 and October 9, 1991 were both sent *after* the claims bar date of June 22, 1991 and thus were untimely; and (3) Damiano's March 28, 1991 letter, which happened to have been sent within the administrative claims period, "was merely a letter from Damiano's counsel to Amerifirst's counsel discussing prior settlement offer [and,therefore,] ... was not a claim sent to the address specified in the published notices." R1-62-5.

[6]The RTC urges us not to consider Damiano's statutory argument because she raises it for the first time on appeal. The principle, however, that an appellate court generally does not consider arguments that were not presented to the trial court, *RTC v. Dunmar Corp.,* 43 F.3d 587, 598 (11th Cir.), *cert. denied,* --- U.S. ----, 116 S.Ct. 74, 133 L.Ed.2d 33 (1995), is a rule of practice, not a jurisdictional limitation. *Dean Witter Reynolds, Inc. v. Fernandez,* 741 F.2d 355, 360 (11th Cir.1984). "[T]he decision whether to consider an argument first made on appeal ...

*Whatley v. RTC,* 32 F.3d 905 (5th Cir.1994).  We agree.

FIRREA is a complex statute.[7]  Understanding the process that § 1821(d) established for the liquidation of failed financial institutions requires careful parsing through its myriad subparts. Our previous review of the statutory scheme led us to conclude that FIRREA created a statutory exhaustion requirement that generally applies to postreceivership as well as pre-receivership claims. *Motorcity of Jacksonville, Ltd. v. Southeast Bank N.A.,*  39 F.3d

---

is left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases." *Id.* (internal quotations and citations omitted) (omission in original).  We have identified certain exceptional circumstances under which we will consider arguments first raised on appeal. *See id.* at 360–61.  Among them, we "will "consider an issue not raised in the district court if it involves a pure question of law, and if refusal to consider it would result in a miscarriage of justice.' " *id.* (quoting *Roofing & Sheet Metal Serv. v. La Quinta Motor Inns,* 689 F.2d 982, 989 (11th Cir.1982)).  Damiano's argument involves statutory interpretation, a pure question of law. Moreover, we consider the dismissal of her potentially meritorious complaint because she did not comply with an administrative procedure of which she was not aware *due to the RTC's failure to notify her as required by statute* to be a miscarriage of justice.  Therefore, we will exercise our discretion and consider the argument.

[7]The First Circuit described FIRREA as follows:

FIRREA's text comprises an almost impenetrable thicket, overgrown with sections, subsections, paragraphs, subparagraphs, clauses, and subclauses—a veritable jungle of linguistic fronds and brambles.  In light of its proxility and lack of coherence, confusion over its proper interpretation is not only unsurprising—it is inevitable.

.... Section 1821(d) ... is a relatively small piece of the statutory puzzle—but one which exemplifies the larger interpretive problem:  section 1821(d) is comprised of nineteen separately numbered fascicles, most with myriad subparts, occupying seven pages of the United States Code. It is, in short, an avalanche of words.

*Marquis v. F.D.I.C.,* 965 F.2d 1148, 1151 (1st Cir.1992).

292, 296 & n. 4 (11th Cir.1994) (collecting cases), *vacated for reh'g en banc,* 58 F.3d 589 (1995), *reinstated in part,* 83 F.3d 1317, 1323 n. 3 (1996) (en banc) (reinstating the relevant part of the first opinion in which the panel construed the administrative exhaustion requirement of FIRREA); *see also Aguilar v. F.D.I.C.,* 63 F.3d 1059, 1061 (11th Cir.1995) (per curiam) (recognizing that FIRREA's administrative exhaustion requirement applies generally to all claims against an institution in federal receivership). The statute deals, however, with pre-receivership lawsuits differently from post-receivership claims as it established "a separate scheme ... for the disposition of lawsuits filed pre-receivership." *Whatley,* 32 F.3d at 908 (5th Cir.1994) (footnote and citations omitted); *see also Aguilar,* 63 F.3d at 1061-62 (explaining the applicability of the exhaustion requirement to pre-receivership lawsuits) (citing *Whatley,* 32 F.3d at 907-08).

For post-receivership claims, the court has no subject matter jurisdiction unless the claimant has exhausted the administrative remedies. *See* 12 U.S.C. § 1821(d)(13)(D)[8]; *McMillian v. F.D.I.C.,* 81 F.3d 1041, 1045 (11th Cir.1996) (involving a post-receivership

---

[8]Section 1821(d)(13)(D) provides:

> Except as otherwise provided in this subsection [1821(d) ], no court shall have jurisdiction over—
>
> (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the [RTC] has been appointed receiver ...; or
>
> (ii) any claim relating to any act or omission of such institution or the [RTC] as receiver.

12 U.S.C. § 1821(d)(1)(D).

employee claim).  The statutory scheme is more complex for claims asserted in pre-receivership lawsuits.  Subject matter jurisdiction is ordinarily tested as of the time of filing the complaint.  *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 569 n. 4, 112 S.Ct. 2130, 2141 n. 4, 119 L.Ed.2d 351 (1992);  *Rosa v. RTC,* 938 F.2d 383, 392 n. 12 (3d Cir.), *cert. denied,* 502 U.S. 981, 112 S.Ct. 582, 116 L.Ed.2d 608 (1991).  Therefore, courts in which lawsuits were pending when the RTC is appointed receiver remain vested with jurisdiction.  *Whatley,* 32 F.3d at 907.  This is confirmed by the statute's reference to the continuation, as opposed to the reinstatement, of pre-receivership lawsuits after the appointment of the receiver.  *See* 12 U.S.C. § 1821(d)(5)(F)(ii).[9]  Moreover, the statute does not provide for an automatic stay of all pre-receivership actions, pending exhaustion of the administrative process.  *Cf.* 11 U.S.C. § 362(a)(1) (automatic stay for all pending lawsuits against debtor who files for bankruptcy).  It specifically gives the receiver the right, but not the duty, to stay a pending action within the first ninety days of being appointed as a receiver.  12 U.S.C. § 1821(d)(12); *see Praxis Properties, Inc. v. Colonial Sav. Bank,* 947 F.2d 49, 71 (3d Cir.1991).

There are two possible explanations for the absence of an

_____

[9]12 U.S.C. § 1821(d)(5)(F)(ii) provides:

> Subject to paragraph (12), the filing of a claim with the receiver shall not prejudice any right of the claimant to *continue* any action which was filed before the appointment of the receiver.

12 U.S.C. § 1821(d)(5)(F)(ii) (emphasis added).  Paragraph (12) allows the RTC to request a ninety-day stay in the litigation after its appointment as a receiver and requires the court to grant such stay.  12 U.S.C. § 1821(d)(12).

automatic stay provision in FIRREA:  either Congress intended for the judicial and administrative processes to run concurrently;  or it intended to give the receiver the discretion of deciding *whether* to require the claimant to exhaust its administrative remedies or to allow the suit to proceed judicially.  The first explanation is inconsistent with FIRREA's aim of the "expeditious[ ] and fair[ ]" resolution of claims against failed financial institutions in federal receivership and its concern for conserving judicial resources.  *See* H.R.Rep. No. 54(I), 101st Cong., 1st Sess. 419 (1989) U.S.Code Cong. Admin.News pp. 86, 215.  [10]  The second explanation is supported both by the legislative history and the language of the statute.  The drafters of FIRREA explained that the purpose of "the stay [is to] give[ ] the [receiver] a chance to analyze pending matters and [to] decide  *how* best to proceed." H.R.Rep. No. 54(I), at 331, 1989 U.S.Code Cong. & Admin.News pp. 86, 127 (emphasis added).  Section 1821(d)(3)(A), which sets out the receiver's authority to determine claims administratively, does not require the receiver to subject all claimants to the administrative process.  Instead, it is permissive, providing that

---

[10]The House report explains the purpose of FIRREA's administrative procedure as follows:

> The claims determination procedure ... enables the FDIC [or RTC] to dispose of the bulk of claims against failed financial institutions expeditiously and fairly....  Thus, the claim resolution process established in this section should allow the FDIC [or RTC] to quickly resolve many of the claims against failed financial institutions without unduly burdening the District Courts.

H.R.Rep. No. 54(I), at 419, U.S.Code Cong. & Admin. News 1989, p. 215.

the RTC "*may,* as receiver, determine claims in accordance with the requirements of this subsection [1821(d) ]." 12 U.S.C. § 1821(d)(3)(A) (emphasis added).[11] We conclude that Congress intended for the receiver to decide whether to "proceed administratively based on the claimant's complaint or any substitute or supplemental filing it may request, *or* forego the privilege of requesting a stay and thus proceed judicially." *Whatley,* 32 F.3d at 908.

The procedure that we have described above is consistent with the two cases involving pre-receivership lawsuits previously decided by this circuit.[12] Both in *Motorcity* and *Aguilar,* the receiver requested a stay pending the submission by the plaintiff of an administrative claim. *See Aguilar,* 63 F.3d at 1061; *Motorcity,* 39 F.3d at 295. In *Aguilar,* we stated: "Where a

---

[11]The use of the permissive "may" both in sections 1821(d)(3)(A) and 1821(d)(12) stands in stark contrast to the many other instances in section 1821(d) where a mandatory "shall" is used. *See, e.g.,* 12 U.S.C. §§ 1821(d)(3)(B), (C).

[12]The RTC contends that *Whatley* 's result, which we adopt here, is contrary to the cases relied upon by this court in *Motorcity,* 39 F.3d at 296 n. 4. None of these cases, however, considered the specific question of statutory interpretation that we have considered here. Only the Ninth Circuit has considered *Whatley* 's result. Without evaluating *Whatley* 's reasoning in detail, the Ninth Circuit rejected its result because it conflicts with that court's interpretation of the claims bar date set out in the receiver's published notices as a jurisdictional requirement. *See Intercontinental Travel Mktg. v. F.D.I.C.,* 45 F.3d 1278, 1284 (9th Cir.1994). This interpretation stems from § 1821(d)(5)(C)(i), which provides that, except in certain narrow circumstances (not applicable here), "claims filed after the date specified in the notice published under paragraph (3)(B)(i) shall be disallowed and such disallowance shall be final." 12 U.S.C. § 1821(d)(5)(C)(i). Our holding, however, is that Damiano is not required to file an administrative claim at all, not that the RTC must consider an untimely claim. Therefore, our holding is not inconsistent with § 1821(d)(5)(C)(i).

lawsuit against a financial institution is pending when the [RTC] is appointed receiver and the [RTC] *timely insists on the use of its administrative processes,* the court action will be suspended, but only suspended[,] ... while the plaintiff exhausts the administrative remedies." 63 F.3d at 1061 (emphasis added). Thus, the RTC must satisfy two conditions to require the plaintiff in a prereceivership lawsuit to exhaust its administrative remedies before continuing the action: (1) The RTC must "insist on the use of its administrative processes," by staying the action *and* informing the plaintiff that it is doing so pending exhaustion of the administrative remedies,[13] and (2) it must do so in a timely fashion, that is within the ninety-day period specified in § 1821(d)(12).

---

[13]The RTC also should fulfill its statutory duty of mailing a copy of the published notice setting out the administrative claims process and the claims bar date to the plaintiff. *See* 12 U.S.C. § 1821(d)(3)(C). Failure to do so raises serious constitutional concerns regarding the sufficiency of notice under the Due Process Clause, *see Freeman v. F.D.I.C.,* 56 F.3d 1394, 1403 (D.C.Cir.1995), even if the plaintiff knew that the failed financial institution it previously sued is now in federal receivership. *Cf. Mennonite Bd. of Missions v. Adams,* 462 U.S. 791, 800, 103 S.Ct. 2706, 2712, 77 L.Ed.2d 180 (1983) (holding that "a mortgagee's knowledge of [a mortgagor's] delinquency in the payment of taxes is not equivalent to notice that a tax sale is pending" and thus does not relieve the government from the requirement of mailing such notice to the mortgagee); *City of New York v. New York, N.H. & H.R. Co.,* 344 U.S. 293, 297, 73 S.Ct. 299, 301, 97 L.Ed. 333 (1953) (holding that, under the old bankruptcy code, a creditor who knew that the debtor commenced bankruptcy proceedings was not under a duty to inquire about the claims bar date established by the bankruptcy court and was, thus, entitled "to assume that the statutory "reasonable notice' will be given them before their claims are forever barred"); *Spring Valley Farms, Inc. v. Crow (In re Spring Valley Farms, Inc.),* 863 F.2d 832, 835 (11th Cir.1989) ("The language in *City of New York* clearly is not grounded in goals unique to the former bankruptcy act. The Court's emphasis on notice and opportunity to be heard underlines a due process concern.").

Although the RTC filed a motion to be substituted as the party defendant in Damiano's suit less than one month after its appointment as Amerifirst's receiver, it did not request a stay pending the exhaustion of administrative remedies until November 21, 1991, more than eight months, or about 240 days, after its appointment as a receiver. Therefore, it has elected to proceed with this lawsuit judicially by failing to timely insist on the use of its administrative processes.[14] To hold otherwise would be to allow the RTC to ignore a lawsuit of which it clearly was aware and in which it had intervened, thus luring the claimant to assume that the RTC is ready to deal with it as a litigant, while "[i]n reality, ... the receiver lies in ambush, awaiting expiration of the administrative deadline so that it may dispose of the claim without consideration of its merits." *Whatley,* 32 F.3d at 908. Like the Fifth Circuit, "[w]e neither find nor assign any such intent to Congress in its enactment of FIRREA." *Id.*

### III. CONCLUSION

Damiano appeals the district court's dismissal of her lawsuit for lack of subject matter jurisdiction. The district court held that Damiano forfeited her pre-receivership claim against a failed financial institution in federal receivership by failing to exhaust her administrative remedies. Because the RTC did not timely request a stay of the action within ninety days of its appointment as receiver, it has elected to allow Damiano's suit to proceed

---

[14]Because we conclude that the RTC elected to proceed with Damiano's suit judicially, we need not review the district court's ruling that Damiano's correspondence with opposing counsel during the claims period did not constitute compliance with FIRREA's administrative process, *see supra* note 5.

judicially.  We therefore VACATE the district court's judgment and REMAND for further proceedings consistent with this opinion.