[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-13579
_____

D. C. Docket No. 2:10-cv-14068-DLG

INTERFACE KANNER, LLC,

Plaintiff-Counter-
Defendant-Appellant,

versus

JPMORGAN CHASE BANK, N.A.,

Defendant-Cross-Defendant-
Appellee,

NATIONAL ASSOCIATION,

Defendant-Appellee,

FEDERAL DEPOSIT INSURANCE
CORPORATION AS RECEIVER FOR
WASHINGTON MUTUAL BANK,

Intervenor-Cross
Claimant-Counter
Claimant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(January 10, 2013)

Before DUBINA, Chief Judge, PRYOR and ANDERSON, Circuit Judges.

DUBINA, Chief Judge:

Appellant Interface Kanner, LLC ("Interface") appeals two district court orders that collectively granted Appellee JPMorgan Chase Bank, N.A.'s ("JPMorgan") motion for summary judgment, denied Interface's motion for summary judgment, and granted Appellee Intervenor Federal Deposit Insurance Corporation's (the "FDIC") request for declaratory relief. In its order granting summary judgment, the district court found that Interface lacked standing to assert a breach of lease claim against JPMorgan. The district court also declared that the FDIC owes no damages to Interface. For the reasons that follow, we vacate the judgment of the district court and remand with instructions to dismiss for lack of subject matter jurisdiction.

I.

2

On April 15, 2008, Interface, as lessor, and Washington Mutual Bank ("WaMu"), as lessee, entered into a lease agreement (the "Lease") involving a parcel of vacant real property located in Martin County, Florida.  The Lease obligated Interface to obtain necessary permits, approvals, and utilities for the property and construct a bank on the premises.  Thereafter, WaMu would use the property as a bank branch location.

On September 25, 2008, prior to performance, WaMu closed as a "failed bank" and entered receivership under the direction of the FDIC.  Consequently, under the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), Pub. L. No. 101-73, § 212 (codified as amended by 12 U.S.C. § 1821(c)), all of WaMu's assets transferred to the FDIC.  On the same day that WaMu failed, the FDIC exercised powers afforded by FIRREA and entered a Purchase and Assumption Agreement ("P & A Agreement") with JPMorgan.  The P & A Agreement set forth the terms and conditions of the transfer of WaMu's assets and liabilities to JPMorgan.  The P & A Agreement provided the following language with respect to the rights of non-parties:

> **13.5 Successors.** All terms and conditions of this Agreement shall be binding on the successors and assigns of the Receiver, the Corporation and [JPMorgan].  Except as otherwise specifically provided in this Agreement, nothing expressed or referred to in this Agreement is intended or shall be construed to give any Person other than the Receiver, the Corporation and [JPMorgan] any legal or equitable

3

right, remedy or claim under or with respect to this Agreement or any provisions contained herein, it being the intention of the parties hereto that this Agreement, the obligations and statements of responsibilities hereunder, and all other conditions and provisions hereof are for the sole and exclusive benefit of the Receiver, the Corporation and [JPMorgan] and for the benefit of no other person.

[R. 37-3 at 45.]

Under the P & A Agreement, JPMorgan acquired some, but not all, of the assets and liabilities which passed from WaMu to the FDIC.  While the P & A Agreement provides JPMorgan the option to accept or reject "Bank Premises" leases, it does not include a similar allowance for "Other Real Estate" leases.[1] Interface argues that JPMorgan assumed the Lease automatically under the P & A Agreement as "Other Real Estate," while JPMorgan and the FDIC argue that JPMorgan had 90 days to accept or reject the Lease as a "Bank Premises."

Within 90 days of executing the P & A Agreement, JPMorgan gave the FDIC and Interface notice that it would not assume the Lease.  Following

---

[1] Under the P & A Agreement, "Bank Premises" is defined as

the banking houses, drive-in banking facilities, and teller facilities (staffed or automated) together with appurtenant parking, storage and service facilities and structures connecting remote facilities to banking houses, and land on which the foregoing are located, that are owned or leased by the Failed Bank and that are occupied by the Failed Bank as of Bank Closing.  [R. 23-4 at 2.]

"Other Real Estate" is defined as

all interests in real estate (other than Bank Premises and Fixtures) including but not limited to mineral rights, leasehold rights, condominium and cooperative interests, air rights and development rights that are owned by the Failed Bank.  [*Id.* at 6.]

4

JPMorgan's election, the FDIC continued to treat the Lease as a retained liability. Pursuant to 12 U.S.C. § 1821(e)(1)(B), the FDIC, as receiver, is provided discretion to "disaffirm or repudiate any . . . lease . . . which . . . [it] determines to be burdensome." On March 23, 2009, the FDIC provided Interface written notice that it elected to exercise this statutory right and disaffirm the Lease.

Thereafter, neither the FDIC nor JPMorgan made any payments under the Lease. Thus, on December 23, 2009, Interface provided JPMorgan with a default notice. JPMorgan did not cure this alleged default, resulting in Interface filing this lawsuit against JPMorgan in the Southern District of Florida asserting one count of breach/repudiation and/or abandonment of the Lease. The FDIC intervened and asserted both a counterclaim and cross-claim for declaratory relief. Specifically, the FDIC sought a declaration that (1) the FDIC did not sell, transfer or assign the Lease to JPMorgan, (2) the FDIC timely repudiated the Lease, and (3) Interface failed to file a timely claim with the FDIC and is not entitled to damages. Subsequently, Interface, JPMorgan, and the FDIC all filed cross-motions for summary judgment.

Initially, the district court granted JPMorgan's motion for summary judgment, denied Interface's motion for summary judgment, and instructed the FDIC to notify the court within three days as to whether any issues remained to be

5

litigated regarding its counterclaim and cross-claim.  The district court reasoned in its initial order that to assert a breach of lease claim against JPMorgan, Interface must establish the existence of an enforceable contract between Interface and JPMorgan.  Further, because Interface and JPMorgan did not enter a contract with each other, the only way that Interface could establish the right to bring suit for breach of lease was through the P & A Agreement.  The district court determined, however, that Interface could not enforce the P & A Agreement because it is neither a party to nor an intended third-party beneficiary of the P & A Agreement.

Interface appealed the initial district court order.  This court dismissed Interface's appeal *sua sponte*, however, because the order did not dispose of all claims against all parties.  Following dismissal of the premature appeal, the district court issued a second order pertaining to the FDIC's request for declaratory relief and Interface's post-summary judgment motions for a new trial and reconsideration.  In its second order, the district court denied both of Interface's post-summary judgment motions and granted declaratory relief to the FDIC.  This timely appeal followed.

Interface contends that the district court erred and that it has standing to maintain the current action because (1) it is an intended third-party beneficiary to

6

the P & A Agreement and (2) it is in privity of estate with JPMorgan.   Interface

also argues that the district court erred in granting declaratory relief to the FDIC.

## II.

We review standing determinations *de novo*.  *Elend v. Basham*, 471 F.3d

1199, 1204 (11th Cir. 2006).  "We review a summary judgment ruling *de novo*,

viewing the materials presented and drawing all factual inferences in a light most

favorable to the non-moving party."  *Bochese v. Town of Ponce Inlet*, 405 F.3d

964, 975 (11th Cir. 2005).

## III.

A. Interface's Standing to Sue

The district court granted JPMorgan's summary judgment motion on the

grounds that Interface is not an intended third-party beneficiary to the P & A

Agreement under Florida law.  We hold that Interface cannot enforce the P & A

Agreement under federal common law because it is not an intended third-party

beneficiary of that contract.  Consequently, the district court lacked subject matter

jurisdiction over Interface's claim against JPMorgan, and the judgment of the

district court is vacated.  *See Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d

1229, 1240 (11th Cir. 2003) ("[A]lthough we agree with the [district] court's

conclusions regarding justiciability of these claims,  . . . we vacate its order of

7

summary judgment and remand to the district court with instructions to dismiss these claims pursuant to Fed. R. Civ. P. 12(h)(3).").

### 1.  Applicable Law

The district court applied Florida law in determining that Interface is not an intended third-party beneficiary to the P & A Agreement because "[t]he question of whether, for standing purposes, a non-party to a contract has a legally enforceable right is a matter of state law."  *AT&T Mobility, LLC v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 494 F.3d 1356, 1360 (11th Cir. 2007).  While this is true, the P & A Agreement includes a choice-of-law provision which provides that federal law controls:

> **13.4 Governing Law**.  This agreement and the rights and obligations hereunder shall be governed by and construed in accordance with the federal law of the United States of America, and in the absence of controlling federal law, in accordance with the laws of the state in which the main office of the failed bank is located.

[R. 37-3 at 35.]

In diversity cases, the choice-of-law rules of the forum state determine what law governs, *American Family Life Assurance Co. of Columbus, Georgia. v. United States Fire Co.*, 885 F.2d 826, 830 (11th Cir. 1989), and under Florida law, courts "enforce choice-of-law provisions unless the law of the chosen forum contravenes strong public policy."  *Maxcess, Inc. v. Lucent Technologies, Inc.*, 433

8

F.3d 1337, 1341 (11th Cir. 2005) (per curiam) (internal citations and quotations omitted).  The parties have not offered any reason why the choice-of-law provision above contravenes strong public policy, and the court is aware of no such reason.  Accordingly, federal law applies in determining whether Interface is an intended third-party beneficiary to the P & A Agreement.

> ### 2.  *Interface is not an intended third-party beneficiary to the P & A Agreement*

To assert a breach of lease claim against JPMorgan, Interface must establish the existence of a contract between itself and JPMorgan.  Interface seeks to do so by enforcing its interpretation of the P & A Agreement entered between FDIC and JPMorgan.  That is, Interface argues that under the P & A Agreement, JPMorgan now stands in the shoes of the FDIC who took over as lessee from WaMu when it failed.  JPMorgan and the FDIC contend that Interface lacks standing to do so.

"[S]tanding is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims."  *Bochese*, 405 F.3d at 974 (quoting *Dillard v. Baldwin Cnty. Comm'rs*, 225 F.3d 1271, 1275 (11th Cir. 2000)).  "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues."  *Koziara v. City of Casselberry*, 392 F.3d 1302, 1304 (11th Cir. 2004) (quoting *Warth v.*

9

*Seldin*, 422 U.S. 490, 498, 95 S. Ct. 2197, 2205 (1975)).   Interface can only establish standing if it is an intended third-party beneficiary of the P & A Agreement.  *See Bochese*, 405 F.3d at 981; *see also Kremen v. Cohen*, 337 F.3d 1024, 1029 (9th Cir. 2003) (applying federal common law in finding that "[a] party can enforce a third-party contract only if it reflects an express or implied intention of the parties to the contract to benefit the third party" (internal quotation marks omitted)).

Under federal common law, the court looks to general contract principles in interpreting the P & A Agreement.  *Ellinger v. United States*, 470 F.3d 1325, 1336 (11th Cir. 2006); *see also Belize Telecom, Ltd. v. Gov't of Belize*, 528 F.3d 1298, 1307 n.11 (11th Cir. 2008) ("When interpreting contracts under federal law, courts look to general common law on contracts.").  One such principle is that only a party to a contract or an intended third-party beneficiary may sue to enforce the terms of a contract.  *GECCMC, 2005-C1 Plummer St. Office L.P. v. JPMorgan Chase Bank, N.A.*, 671 F.3d 1027, 1032-33 (9th Cir. 2012) (applying federal common law); RESTATEMENT (SECOND) OF CONTRACTS § 304 (1981).  In contrast, a beneficiary whose benefit is merely incidental has no right to sue to enforce a contract as a non-party.  *GECCMC*, 671 F.3d at 1033; *see also* RESTATEMENT

10

(SECOND) OF CONTRACTS § 315 (noting that an incidental beneficiary acquires "no right against the promisor or the promisee").

Further, government contracts, such as the P & A Agreement, "often benefit the public, but individual members of the public are treated as incidental beneficiaries unless a different intention is manifested." RESTATEMENT (SECOND) OF CONTRACTS § 313(2) cmt. a. Thus, third parties to government contracts "are generally assumed to be incidental beneficiaries." *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1211 (9th Cir. 1999). To overcome this presumption, Interface must show that the parties "clear[ly] inten[ded]" that Interface be permitted to sue to enforce the P & A Agreement. *Beckett v. Air Line Pilots Ass'n*, 995 F.2d 280, 288 (D.C. Cir. 1993). Although Interface "need not be specifically or individually identified in the contract, [Interface] must fall within a class clearly intended to be benefited thereby." *Montana v. United States*, 124 F.3d 1269, 1273 (Fed. Cir. 1997).

Interface's task of demonstrating "clear intent" is made significantly more difficult by the P & A Agreement's express disclaimer to the contrary. As referenced above, section 13.5 of the P & A Agreement expressly disclaims any intent to create third-party beneficiaries. To overcome this disclaimer, Interface points out that section 13.5 also states that this disclaimer is limited "as otherwise

11

specifically provided in this Agreement."  Interface argues that this disclaimer

limitation, when read together with language from section 2.1, which provides that

"[JPMorgan] agrees to pay, perform, and discharge, all of the liabilities of [WaMu]

as of Bank Closing," creates a clear intention to benefit a landlord such as

Interface.

In an almost identical case, *GECCMC, 2005-C1 Plummer Street Office L.P.*

*v. JPMorgan Chase Bank, N.A.*, the Ninth Circuit Court of Appeals rejected the

same argument that Interface asserts here, concluding that the P & A Agreement

did not "reflect a 'clear intent' to confer a benefit on [the landlord.]"  671 F.3d at

1034.  More specifically, the court found that the landlord's "reliance on section

2.1 . . . does not evince the specificity required to carve out enforceable rights as

contemplated by section 13.5," nor does section 2.1 "show the 'clear intent' needed

to rebut the presumption that [the landlord] is merely an incidental beneficiary."

*Id.* at 1035; *see also Wichita Falls Office Assocs. v. Banc One Corp.*, No. 3:90-CV-

1301-H, Mem. Op. at 19 (N.D. Tex. Nov. 22, 1993), *aff'd without opinion*, 40 F.3d

384 (5th Cir. 1994) (finding that the phrase "except as otherwise specifically

provided" did not reference other sections of a P & A Agreement in a clear enough

manner to overcome the presumption against intended third-party beneficiaries).

We agree with this reasoning and find that the P & A Agreement does not provide

12

a "clear intent" to benefit Interface.  Thus, we conclude that Interface is not an intended third-party beneficiary to the P & A Agreement and cannot sue to enforce it.

### 3. Privity of Estate

Interface also argues that it has standing to sue JPMorgan for breach of lease because the two are in privity of estate.  This argument fails because it is dependent on Interface's ability to enforce its interpretation of the P & A Agreement, which, as discussed above, Interface lacks standing to do.

### B. FDIC's Declaratory Relief

The district court declared that the FDIC owed no damages to Interface based on any potential claim Interface had against the FDIC.  This determination was erroneous.  The district court did not have the authority to grant declaratory relief because Interface had yet to submit a claim against the FDIC through the FIRREA administrative claims process.  Except as otherwise provided in FIRREA, "no court shall have jurisdiction over – (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the [FDIC] has been appointed receiver. . . or (ii) any claim relating to any act or omission of such institution or the [FDIC.]"  12

13

U.S.C. § 1821(d)(13)(D)(i)-(ii);[2] *see also Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. City Sav., F.S.B.*, 28 F.3d 376, 385 (3d Cir. 1994) (finding that the plain meaning of § 1821(d)(13)(D)(i) includes declaratory judgment actions).

While FIRREA does not provide "an explicit mandate for exhaustion of administrative remedies[,] [its] provisions are accepted by the cases and by Congress as having that meaning." *F.D.I.C. v. Lacentra Trucking, Inc.*, 157 F.3d 1292, 1294 (11th Cir. 1998). Thus, for post-receivership claims—such as Interface's potential claim against the FDIC—the court has "no subject matter jurisdiction unless the claimant has exhausted the administrative remedies." *Damiano v. F.D.I.C.*, 104 F.3d 328, 333 (11th Cir. 1997); *see also Aguilar v. F.D.I.C.*, 63 F.3d 1059, 1061 (11th Cir. 1995) (per curiam) (noting that "[u]nder FIRREA, federal courts generally lack the authority to decide claims against an institution in federal receivership until the claimant has exhausted his administrative remedies against the FDIC"). Because "FIRREA contains no provision granting federal jurisdiction to claims filed after a receiver is appointed but before administrative exhaustion," *Meliezer v. Resolution Trust Co.*, 952 F.2d 879, 882 (5th Cir. 1992), and because it is undisputed that Interface has not submitted a claim against the FDIC through the FIRREA administrative claims

---

[2] *See* 12 U.S.C. § 1821(d)(6) (providing for the option of filing suit after the FDIC's initial determination to allow or disallow a claim in one of two specified federal courts); *id.* § 1821(d)(7)(A) (providing for judicial review of the FDIC's final administrative determination).

14

process, the district court lacked jurisdiction to declare that Interface is not entitled to damages from the FDIC.  Accordingly, this portion of the district court's judgment is also vacated.

## IV.

For the foregoing reasons, we conclude that Interface is not an intended third-party beneficiary of the P & A Agreement executed between FDIC and JPMorgan, and, as a result, Interface lacks standing to enforce its interpretation of that agreement.  We also conclude that the district court lacked jurisdiction to award declaratory relief to the FDIC.  Consequently, upon remand, the district court should dismiss this action for lack of subject matter jurisdiction.

**VACATED and REMANDED.**

15