[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-11777

Non-Argument Calendar
_____

D.C. Docket No. 4:11-cv-10086-JEM

RPM NAUTICAL FOUNDATION, INC.,

Plaintiff - Counter Defendant -
Appellee,

versus

CENTENNIAL BANK,

Defendant - Third Party Plaintiff
Cross Claimant -
Counter Claimaint -
Counter Defendant – Appellant,

FEDERAL DEPOSIT INSURANCE CORPORATION,
in its corporate capacity and in its capacity as Receiver for Key West Bank,

Defendant - Cross Defendant -
Appellant,

OLD REPUBLIC NATIONAL TITLE INSURANCE
COMPANY, et al.,

                                        Defendant -
                                        Cross Defendant,

THE ESTATE OF THOMAS J DIDATO,

                                        Defendant -
                                        Third Party Defendant,

THOMAS J. DIDATO, P.A.,

                                        Defendant,

NEW STOCK ISLAND PROPERTIES, LLC.,

                                        Defendant -
                                        Cross Claimant -
                                        Third Party Defendant,
                                        Counter Claimant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(March 9, 2015)

Before TJOFLAT, WILSON, and EDMONDSON, Circuit Judges.

2

PER CURIAM:

Defendants Centennial Bank ("Centennial")[1] and the Federal Deposit Insurance Corporation ("FDIC"),[2] as receiver for Key West Bank, appeal the district court's grant of summary judgment in favor of RPM Nautical Foundation, Inc. ("RPM") in RPM's suit against Centennial for breach of contract. Reversible error has been shown; we vacate the district court's order and remand with instructions to dismiss the case for lack of subject-matter jurisdiction.

These undisputed facts are pertinent to this appeal. RPM agreed to transfer ownership of real property to New Stock Island Properties, LLC ("NSIP"). Pursuant to the terms of the purchase agreement, NSIP agreed to deposit $1.25 million in an escrow account for the benefit of RPM. RPM, NSIP and Key West Bank entered into an Escrow Agreement, designating Key West Bank as the escrow agent. Key West Bank opened the escrow account, and NSIP deposited $1.25 million into the account.

---

[1] Contrary to RPM's assertions, Centennial filed an initial and reply brief in this appeal, in which it joined in and adopted the contents of the FDIC's appellate briefs.

[2] We are unpersuaded by RPM's claim that the FDIC lacks standing to prosecute this appeal. The district court's determination that RPM (a non-party to the contract between the FDIC and Centennial) has standing to interpret and to enforce that contract in a way that conflicts with the contracting parties' interpretation affects adversely the FDIC's interests in enforcing the terms of its own contracts both in this case and in other cases. See Knight v. State of Ala., 14 F.3d 1534, 1555 (11th Cir. 1994) ("[A] defendant ordinarily has standing to appeal any ruling on the plaintiff's cause of action that is adverse to the defendant's interests.").

Key West Bank was later closed by the Office of Thrift Supervision, and the FDIC took over as receiver.  The FDIC (as receiver for Key West Bank and in its corporate capacity) entered into a Purchase and Assumption Agreement ("P&A Agreement") with Centennial, under which Centennial assumed portions of Key West Bank's assets and liabilities.

A couple of months later, RPM, in accordance with the terms of the Escrow Agreement, demanded disbursement of the escrow funds from Centennial, as successor escrow agent.  Centennial failed to deliver the funds.[3]  The parties dispute whether, and to what extent, Centennial assumed liability for the Escrow Agreement under the terms of the P&A Agreement.

RPM filed this civil action in state court asserting, among other things,[4] a claim against Centennial, as successor escrow agent to Key West Bank: a claim for breaching the Escrow Agreement.  After the case was removed to federal court, the district court granted RPM's motion for summary judgment, concluding that (1) "through the express and unambiguous terms of the Purchase and Assumption

---

[3] As it turned out, the escrow account was set up in such a way to allow closing attorney T. D. access to the account.  While the escrow funds were deposited with Key West Bank, T.D. withdrew improperly nearly all the funds from the account so that, by the time Key West Bank entered receivership, the account contained only hundreds of dollars.

[4] This case has a complex procedural history, involving nine parties and multiple claims, counterclaims and cross-claims.  The only claim before us on appeal, however, is RPM's claim against Centennial for breach of the Escrow Agreement.

Agreement, Centennial assumed the terms and conditions of the Escrow Agreement . . . and became the successor escrow agent to Key West Bank"; and (2) Centennial breached the terms of the Escrow Agreement when it failed to deliver the escrow funds upon request.

Centennial filed a motion for reconsideration. Centennial argued, in part, that -- based on this Court's intervening decision in Interface Kanner, LLC v. JPMorgan Chase Bank, N.A, et al., 704 F.3d 927 (11th Cir. 2013) -- the district court lacked subject-matter jurisdiction to consider RPM's claim against Centennial. The district court rejected Centennial's argument and denied the motion.[5] The district court then entered final judgment against Centennial and awarded RPM over $1.4 million in recovery.

We review de novo issues of subject-matter jurisdiction, including standing. Elend v. Basham, 471 F.3d 1199, 1204 (11th Cir. 2006).

This appeal is controlled by our decision in Interface Kanner. In that case, Interface Kanner entered into a commercial lease agreement with Washington Mutual Bank ("WaMu"). 704 F.3d at 929. WaMu later failed; then WaMu entered into receivership under the direction of the FDIC. Id. Under the terms of a

---

[5] The district court also rejected Centennial's argument that the district court failed to consider adequately Centennial's answer and various affirmative defenses. Defendants raise no challenge to the denial of the motion for reconsideration on these grounds and, thus, have abandoned that argument on appeal. See N. Am. Med. Corp. v. Axiom Worldwide, Inc., 522 F.3d 1211, 1217 n.4 (11th Cir. 2008).

5

purchase and assumption agreement, the FDIC transferred some of WaMu's assets and liabilities to JPMorgan. Id. at 930. When neither JPMorgan nor the FDIC made payments under the lease and failed to cure the alleged default, Interface Kanner filed suit against JPMorgan for breaching the lease. Id.

We concluded that Interface Kanner lacked standing to raise its claim against JPMorgan. Id. at 931. We explained that, to assert the breach of lease claim, Interface Kanner had to establish first a contractual relationship between itself and JPMorgan. Id. at 932. Interface Kanner attempted to do by arguing -- based on the language of the purchase and assumption agreement between the FDIC and JPMorgan -- that JPMorgan had assumed the lease after WaMu failed. Id. Because Interface Kanner was no party to or a third-party beneficiary of the purchase and assumption agreement, we determined that Interface Kanner lacked standing to enforce the terms of the agreement. Id. at 932-33. As a result, the district court lacked subject- matter jurisdiction to consider the claim. Id. at 934.

Like the plaintiff in Interface Kanner, RPM must first establish the existence of some contractual relationship between itself and Centennial before RPM can assert its claim against Centennial for breach of the Escrow Agreement. In arguing that Centennial assumed liability for the Escrow Agreement and became the successor escrow agent to Key West Bank, RPM relies expressly on its own

6

interpretation of the P&A Agreement between Centennial and the FDIC. But RPM does not contend that it is either a party to, or a third-party beneficiary of, the P&A Agreement.[6] Because this case is materially indistinguishable from this Court's binding precedent in Interface Kanner,[7] we conclude that RPM lacks standing to enforce the terms of the P&A Agreement. See Interface Kanner, 704 F.3d at 932-33.

Because RPM lacks standing to enforce the P&A Agreement and has not otherwise established a contractual relationship between itself and Centennial, it cannot assert a claim against Centennial for breaching the Escrow Agreement. The district court lacked subject-matter jurisdiction to consider RPM's claim; we vacate the district court's judgment and remand with instructions that the district court dismiss this claim for lack of subject-matter jurisdiction.[8]

---

[6] On appeal, RPM says expressly that it "did not bring a claim as third party beneficiary of the P&A Agreement, but rather for successor liability under the Escrow Agreement to which RPM was a party and which provided that it was binding on Key West Bank's successors and assigns."

[7] RPM attempts to distinguish Interface Kanner because, in that case, the purchase and assumption agreement gave JPMorgan the option to reject certain leases and JPMorgan gave notice that it would not assume the lease at issue. Those facts were not germane to the Court's final decision, however, because the Court never reached the merits of the underlying dispute. Instead -- without regard to the merits of the parties' arguments about whether JPMorgan assumed the lease under the terms of the purchase and assumption agreement -- the Court determined that Interface Kanner lacked standing to enforce the agreement. See 704 F.3d at 931-33.

[8] We reject Defendants' alternate argument that the district court lacked subject-matter jurisdiction based on RPM's alleged failure to exhaust its administrative remedies under the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"). Because

7

VACATED AND REMANDED.

---

RPM asserts directly no claim against the FDIC or Key West Bank, and because RPM's breach of contract claim against Centennial is based on Centennial's post-receivership failure to disburse escrow funds (not on an alleged act or omission of the FDIC or of Key West Bank), we are unconvinced that RPM's claim is subject to FIRREA's exhaustion requirement. See 12 U.S.C. § 1821(d)(13)(D).