[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**

**U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 9, 2005
THOMAS  K. KAHN
CLERK**

No. 04-12151

D. C. Docket No. 02-00141-CV-4

NANETTE SANDERS,
JAMES A SANDERS, JR.,

                                        Plaintiffs-Appellants,

versus

LULL INTERNATIONAL, INC.,

                                         Defendant-Appellee,

BUILDERS INSURANCE GROUP, INC.,
f.k.a. Association Services, Inc.,

                                        Intervenor-Defendant-Appellee.

———————————————

Appeal from the United States District Court
for the Southern District of Georgia

———————————————

**(June 9, 2005)**

Before ANDERSON and WILSON, Circuit Judges, and OWENS[*], District Judge.

ANDERSON, Circuit Judge:

———————————————

[*]      Honorable Wilbur D. Owens, Jr., United States District Judge for the
Middle District of Georgia, sitting by designation.

This is a tort case in which plaintiff James Sanders, a construction worker, was injured when defendant manufacturer's forklift turned over. Sanders faults manufacturer Lull in the forklift's design, manufacture, construction, as well as its duty to inspect, test, and warn of its dangerous condition.[1] The district court granted summary judgment to Lull, reasoning that Sanders had misused the forklift, and that his misuse negated any liability on the part of Lull. We reverse and remand for further proceedings consistent with this opinion.

## I. FACTS AND PROCEDURAL HISTORY

On February 24, 2001, while working at a construction site in St. Simons, Georgia, Sanders was elevated with a co-worker by a Lull forklift equipped with a work platform secured to the forks. Sanders' employer had rented the forklift from an equipment rental facility on the day prior to the accident. While the boom, or arm, of the forklift was extended, the forklift's operator performed a "feather" maneuver – he slightly manipulated the forklift's leveling system to change the tilt of the machine.[2] The machine shifted swiftly to the right and tipped over with Sanders and his co-worker approximately thirty feet in the air, causing both men to

---

[1] James Sanders' wife, Nanette Sanders, filed a claim for loss of consortium based on the same facts, and is also a party to this lawsuit.

[2] The parties agree that the operator operated the forklift properly.

2

fall and Sanders to sustain injuries. Sanders and his co-worker were under the forklift's weight limit, and Lull does not allege that anything they did, or that the attached work platform, caused the machine to tip over. The parties agree that the machine likely tipped over because the safety system that is supposed to slow the frame tilt mechanism when the boom is extended above 40 degrees failed to activate.

The parties agree that one possible cause of the accident was that an unknown third party intentionally bypassed the proximity switch by taping a coin or metal object on it. The proximity switch activates the forklift's safety system that slows the boom's movement when it is extended. The parties state that it is a common practice in the construction industry to attempt to bypass the switch by taping a metal object, such as a coin, over it. Lull had affixed a warning sticker to the machine that stated "Warning: Do not disconnect or bypass proximity switches. Bypassing proximity switches may result in personal injury or death." There was no physical evidence that anyone intentionally bypassed the proximity switches, and Lull does not allege that Sanders or his employer intentionally bypassed the system.

Sanders submitted an affidavit of an expert, Dr. Isaac Avitan, in support of

his claim that Lull caused or contributed to the forklift's tip-over.[3]  Dr. Avitan testified that the forklift did not operate as designed at the time of the accident, and posited three possible explanations why the machine tipped over: (1) an unknown third party intentionally bypassed the safety switches of the forklift by placing a coin or metal object on them; (2) a foreign object jumped the electrical circuit board, resulting in an inadvertent bypass of the safety system; or (3) an intermittent electrical failure occurred in the circuit board causing a bypass.  Dr. Avitan testified that the most likely explanation was that the safety device was intentionally bypassed by a third party.

Lull had affixed a warning to the forklift, stating, "This machine is not equipped to lift personnel. Never use this machine as a work platform."  Yet Lull's owner's manual stated:

> Lull strongly recommends that you DO NOT use the
> rough terrain forklift as a personnel lift. It is designed for
> material handling ONLY. If personnel MUST be lifted,
> lift only in accordance with ASME/ANSI B56.6 19922,
> Para. 5.15 and with a properly designed work platform.

Lull's company spokesman, who designed the forklift, testified that using the

---

[3]  Lull argues that Dr. Avitan's testimony should be excluded under the principles announced in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).  The district court denied Lull's motion to exclude the testimony as moot after granting summary judgment in favor of Lull.  We decline to rule on this issue in order to allow the district court to examine it first and to exercise its discretion on remand.

work platform in this case, if properly attached, is "an acceptable way of doing it."

The district court granted summary judgment to Lull, reasoning that the fact that Sanders and his employer used the forklift to lift personnel negated the proximate cause between his injuries and any defect in the forklift. The court stated:

> It is undisputed that Lull warned against lifting personnel (as opposed to materials) and that James [Sanders] and his employer misused the forklift by lifting personnel, including James himself. The risk of violating the warning (Lull did not design that forklift to be safe enough to risk lifting people, as opposed to material) was open and obvious to James, and the fact that he did not read or heed the warning decal (which he does not otherwise show was deficient in terms of 'type-face/print-size, etc.), does not affect the result here.

Order at 8. The district court stated that product alteration and/or misuse is an affirmative defense to warning, design, and manufacture-based claims because it negates the element of proximate cause. The district court acknowledged that it was not a complete defense where the products were "foreseeably misused" and the results of such misuse were not obvious to the user. The district court found, however, that Sanders' misuse was obvious, and stated that while it may be common knowledge that forklifts are misused to lift personnel, manufacturers are not insurers against misuse. Accordingly, the district court granted summary

5

judgment to Lull.

## II. STANDARD OF REVIEW

We review a summary judgment ruling de novo, "view[ing] the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion." Shaw v. Connecticut Gen. Life Ins. Co., 353 F.3d 1276, 1282 (11th Cir. 2003) (citing Burton v. City of Belle Glade, 178 F.3d 1175, 1186-87 (11th Cir. 1999)). A motion for summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Id. (citing Fed.R.Civ.P. 56(c)).

## III. DISCUSSION

### A. Misuse

We find that a rational juror could conclude that Sanders did not misuse the forklift by using it with a specially designed work platform, and that the district court erred in granting summary judgment on that basis. When interpreting Georgia law, this Court has stated:

> Product misuse is defined as use of a product in a manner
> that could not reasonably be foreseen by the defendant.
> Misuse of a product may bar recovery against the

6

> manufacturer where misuse is the sole proximate cause of damage, or where it is the intervening or superseding cause. A manufacturer is not liable for injuries resulting from abnormal use of the product.

Thorton v. E.I. Du Pont De Nemours and Co., Inc., 22 F.3d 284, 288 (11th Cir. 1994) (internal citations omitted). Lull argues that the use of the forklift to lift personnel was foreseeable, but that Lull sufficiently warned against it to make it clear that such use constituted "misuse." Lull points to the warning affixed to the forklift, which stated, "This machine is not equipped to lift personnel. Never use this machine as a work platform." However, Sanders presented significant evidence to suggest that it was reasonable to think that the warning affixed to the machine was inapplicable when the forklift was equipped with a work platform specially designed for lifting personnel.

Lull's owner's manual indicates that using a specially designed work platform to lift personnel was both a foreseeable and permissible use of the forklift when it states "If personnel MUST be lifted, lift only in accordance with ASME/ANSI B56.6 19922, Para. 5.15 and with a properly designed work platform." Lull's company spokesman, who designed the forklift, testified that using the work platform in this case, if properly attached, is "an acceptable way of doing it." Lull cites a number of "failure to warn" cases and argues that Sanders

7

did not read the owner's manual and therefore the language it uses is irrelevant.

Lull's argument confuses Sanders' claim and the appropriate analysis. Sanders' argument in this regard did not relate to the sufficiency of the owner's manual's warnings;[4] rather, his argument was that the owner's manual provides evidence that his use of a specially designed work platform was foreseeable and permitted by Lull,[5] and therefore did not constitute the type of misuse that would relieve Lull of liability. We agree that a reasonable juror could come to the conclusion that Sanders' use of the forklift did not constitute misuse such that it would preclude liability.[6]

---

[4]    Incidentally, to the extent that warnings are relevant to issues in this case (including both warnings with respect to lifting personnel and warnings with respect to the proximity switch), the adequacy of such warnings are jury questions in this case.

[5]    We also disagree with the district court's holding that the risk of lifting people was open and obvious. We conclude that any open and obvious issues in this case present questions for the jury.

[6]    Lull relies heavily on Veliz v. Rental Service Corp., 313 F.Supp. 2d 1317 (M.D. Fla. 2003), for the proposition that Sanders misused the forklift and that the misuse was the proximate cause of his injuries. Veliz is an unappealed opinion in which the Middle District of Florida granted summary judgment to Lull in an unrelated forklift tip-over accident, reasoning that the plaintiff's misuse of the forklift as a personnel carrier negated proximate cause. Id. Lull argues that the case is equally relevant under Georgia law because in Georgia, misuse can bar recovery when it is the sole proximate or intervening cause of damage. Veliz, however, is inapposite for many reasons, including, in particular, because it involved a clear misuse of the forklift. The plaintiff in Veliz did not use a specially designed work platform, but rather stood on the bare forks of the forklift, a practice that Lull had unequivocally warned against. By contrast, there is a question of fact as to whether Sanders misused the forklift.

Because Veliz is inapposite, we decline to address the soundness of its various holdings. However, Lull relies upon Veliz in arguing that Sanders' misuse of the

B. Other Proximate Cause Issues

Lull further argues that even if there is an issue of material fact as to whether Sanders misused the forklift, we should affirm summary judgment in its favor because even the plaintiff's expert acknowledges that the accident was most likely caused by a third party taping a coin over the safety device. Lull argues that the third party's likely intervention relieved it of any potential liability under Georgia law.

We reject Lull's argument because we find that it is a question for the jury as to whether a third party taped a coin over the safety device.[7] What caused the

---

forklift was the sole proximate cause of his injuries. We reject that argument. Veliz is not binding precedent, and the summary judgment record in the instant case does not permit a conclusion that Sanders' presence on the forklift's platform was the sole proximate cause of his injuries. To the contrary, it seems more likely that his injuries were caused by the fact the forklift tipped over, and it is quite clear that his presence on the platform did not precipitate the tip over. Had Sanders clearly misused the forklift by riding in the work platform and fallen off of the work platform while the forklift functioned in a foreseeable way, it is conceivable that the sole proximate cause of his injuries in that case could have been his misuse, and such a case might have been decided on summary judgment. However, Sanders was not injured solely because he rode in the work platform, or by any foreseeable consequence of riding on the platform. Rather, he was more likely injured because the forklift itself turned over. Thus, to the extent that the district court in the instant case held that Sanders' use of the forklift platform was the sole proximate cause, the district court erred. We hold in the instant case that issues relating to proximate cause are properly questions for the jury.

[7] The parties disagree regarding the question of whether a jury finding of third party intervener would necessarily negate liability on the part of Lull. We decline to reach this issue because the district court has not addressed it, it is inadequately briefed by the parties, and it is not necessary for us to decide it in order to conclude that this case has to be reversed and remanded for a jury trial.

9

machine to tip over and if the tip over caused Sanders' injuries are questions relating to proximate cause, and, in Georgia, "it is axiomatic that questions regarding proximate cause are 'undeniably a jury question' and may only be determined by the courts 'in plain and undisputed cases.'" Ontario Sewing Mach. v. Smith, Co., 572 S.E.2d 533, 536 (Ga. 2002). Sanders' expert posited three theories as to why the machine tipped over. No physical evidence of a coin was found, and no one has testified to seeing the safety device altered in any way. A reasonable juror could conclude that this lack of evidence of a third-party intervener indicates that one of the other two explanations offered by Sanders' expert is more plausible.[8]

## IV. CONCLUSION

For the foregoing reasons, we REVERSE the district court's grant of summary judgement and REMAND for further proceedings consistent with this opinion.

---

[8] We reject without need for further discussion Lull's other arguments bearing on proximate cause. As noted above, we conclude that the issues in this case relating to proximate cause are questions for the jury.

10