[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-14077
_____

D.C. Docket No. 1:10-cv-00054-JRH-WLB

HILLS MCGEE,

Plaintiff - Counter
Defendant -Appellant,

versus

SENTINEL OFFENDER SERVICES, LLC,

Defendant - Counter
Claimant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Georgia
_____
(June 6, 2013)

Before TJOFLAT and BLACK, Circuit Judges, and MOTZ,[*] District Judge.

PER CURIAM:

## I.

On October 23, 2008, Hills McGee pled "no contest" to two misdemeanor offenses in the State Court for Richmond County, Georgia. The trial court sentenced McGee to consecutive prison sentences of twenty-four months, but suspended the execution of the sentences, instead placing him on probation for twenty-four months. As a condition of his probation, McGee had to pay a $39 monthly Probation Supervision Fee to Sentinel Offender Services, LLC ("Sentinel"), a private probation services company that contracted with Richmond County to provide supervision for probationers.[1]

In the summer of 2009, McGee stopped reporting to his probation officer and had failed to pay $186 in overdue supervision fees. Sentinel therefore petitioned the trial court to revoke McGee's probation. On January 13, 2010, the

---

[*] The Honorable J. Frederick Motz, District Judge, United States District Court for the District of Maryland, sitting by designation.

[1] The Georgia legislature has authorized Georgia counties to contract with private entities to provide probation services. O.C.G.A. § 42-8-100(g)(1) provides:

The chief judge of any court within the county, with the approval of the governing authority of that county, is authorized to enter into written contracts with corporations, enterprises, or agencies to provide probation supervision, counseling, collection services for all moneys to be paid by a defendant according to the terms of the sentence imposed on the defendant as well as any moneys which by operation of law are to be paid by the defendant in consequence of the conviction, and other probation services for persons convicted in that court and placed on probation in the county.

2

court held a revocation hearing.  Prior to the hearing, McGee signed a form stating that he waived the assistance of counsel.  At the hearing, the probation officer established McGee's noncompliance with the conditions of his probation—failure to report to his probation officer and to pay the $39 monthly fee.  The court revoked McGee's probation and imposed an alternative sanction.  If McGee immediately paid the $186 arrearage due Sentinel, his probation would be terminated.  If he failed to pay the $186, McGee would be confined in the county jail for two months.  McGee did not pay the $186 and was sent to jail.

On January 22, 2010, McGee filed a petition for a writ of habeas corpus, pursuant to O.C.G.A. § 9-14-1 et seq., in the Superior Court of Richmond County, seeking release from confinement.  On January 28, 2010, the court granted McGee's petition, holding that McGee lacked the mental competence to waive his right to counsel at his probation revocation hearing.  The court found that the continued confinement of McGee would be unlawful and ordered his release.

More than a month after his release, on March 8, 2010, McGee received a letter from a Sentinel employee assigned to oversee his probation.  The letter stated that McGee had failed to report to his probation officer and that he must pay $186 to Sentinel at his next reporting date on March 16, 2010.  On April 1, 2010, McGee received another letter from Sentinel that stated that McGee had failed to report to his probation officer on March 16, 2010.  It went on to say that if McGee failed to

report on April 12, 2010, Sentinel would petition the court to revoke his probation. On April 16, 2010, in response to these letters, McGee filed a suit against Sentinel in the Superior Court of Richmond County. The suit was initiated with a document styled "Petition to Hold Sentinel Offender Services, LLC in Willful Contempt of Court and Petition for Damages" (the "complaint"). That same day, the court issued a temporary restraining order against Sentinel and ordered it to show cause why the court should not hold it in willful contempt of court for seeking the revocation of McGee's probation after the court had issued a writ of habeas corpus effectively terminating his probation.[2]

The complaint contained two counts. Count I requested that the court hold Sentinel in criminal contempt of court for resisting the Superior Court's order granting McGee a writ of habeas corpus and "using its position as a probation company to attempt to collect a debt that is not owed or due by threatening to have [McGee] jailed without bond." Record, no. 1-1, at 4. Count I also sought an injunction that would forbid Sentinel from taking any action against McGee based on what McGee described as his "voided conviction." Count II, which was brought as a class action for damages,[3] alleged that Sentinel engaged in a pattern of

---

[2] Though its order to show cause did not so state, the court was apparently treating Sentinel's potential contempt as criminal contempt and using the civil case McGee had brought as the foundation for the criminal proceeding.

[3] McGee's purported class consisted of all individuals (1) who had been convicted of a misdemeanor or ordinance violation in the State of Georgia; (2) who are under probation

4

racketeering activity as defined by the Georgia Racketeer Influenced and Corrupt Organization Act (RICO), O.C.G.A. § 16-14-1 et seq.  Count II asserted that Sentinel had attempted to commit two acts of racketeering activity, specifically two acts of theft by deception, by sending McGee the March 8, 2010, and April 1, 2010, letters.  Finally, in two paragraphs of seemingly out-of-place allegations, Count II also requested that the court declare O.C.G.A. § 42-8-100(f) [4] invalid under the Georgia constitution.

On April 23, 2010, Sentinel removed the suit to the United States District Court for the Southern District of Georgia pursuant to the diversity jurisdiction granted to federal courts by the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d)(2).  McGee v. Sentinel Offender Servs., LLC, No. 110-054 (S.D. Ga. Apr. 23, 2010).  McGee moved the court to remand the case to state court, but the court denied his motion.

On April 29, 2010, upon the consent of the parties, the District Court issued a permanent injunction forbidding Sentinel from taking any action to collect any fee or to have any arrest warrant issued that would interfere with the habeas relief

---

supervised by Sentinel; and (3) who have paid any fee to Sentinel.  The District Court did not hold a hearing to determine class certification.

[4]  The provision that McGee references in his petition is now codified at O.C.G.A. § 42-8-100(g).  See supra note 1.  We refer to the statute as it is currently codified.

5

granted McGee by the Superior Court of Richmond County.[5]  In the same order, the court acknowledged that McGee had withdrawn his petition for contempt.  In its answer to the complaint, Sentinel asserted a counterclaim seeking a declaration affirming the constitutionality of O.C.G.A § 42-8-100(g).  On February 14, 2011, Sentinel moved the District Court for summary judgment, asserting that McGee's RICO claim and constitutional challenge to O.C.G.A. § 42-8-100(g) failed as a matter of law.  On the same day, McGee moved the court for partial summary judgment on his constitutional challenge to O.C.G.A. § 42-8-100(g).

The District Court granted Sentinel's motion and denied McGee's.  The court found that the RICO claim failed to present a genuine issue for trial because McGee failed to show any evidence that Sentinel intended to commit theft by deception in sending the letters.  Sentinel produced sworn statements from Trinity Claros, the Sentinel employee assigned to oversee McGee's probation; Crystal Page, the Area Manager for Sentinel's Augusta office; and Mark Contestabile, Sentinel's Chief Operating Officer, all asserting that the letters were sent because of an error in their computer system and not with the intent to create a false impression or to collect any money from McGee after he had obtained habeas corpus relief.  In assessing McGee's response, the District Court noted that McGee

---

[5] Neither McGee's application for the injunction nor the order granting the injunction indicated the basis for the court's issuance of the injunction.  Whether the court had any authority to issue it is not at issue in this appeal.

6

offered no affidavit, deposition, or other citation to the record to suggest Sentinel intended to deceive him; he merely denied the statements offered by Sentinel. The court then found that McGee had failed to meet his burden on summary judgment to demonstrate a genuine issue for trial with respect to the element of intent, holding that "no reasonable juror could find Sentinel specifically intended to create a known false impression in Plaintiff and committed the predicate act of attempted theft by deception." Record, no. 55, at 15.

Though it was not alleged as such, the District Court treated McGee's constitutional challenge as a separate claim for relief and dismissed it. The court observed that Georgia law requires that the Attorney General of Georgia be given notice whenever a Georgia statute's constitutionality is challenged and that this requirement is jurisdictional in nature. Finding that the Attorney General had not been given notice of this suit, the court held that it lacked subject matter jurisdiction to consider the constitutionality of O.C.G.A. § 42-8-100(g). The court entered final judgment in favor of Sentinel and closed the case.

McGee appeals the District Court's judgment granting summary judgment in favor of Sentinel.

II.

A.

First, McGee attacks the District Court's subject matter jurisdiction by asserting that his case was improperly removed from state court because Sentinel did not satisfy its burden of establishing the $5,000,000 amount-in-controversy requirement under CAFA.[6] See 28 U.S.C. § 1332(d)(2). We review de novo whether a district court properly exercised removal jurisdiction. Henson v. Ciba-Geigy Corp., 261 F.3d 1065, 1068 (11th Cir. 2001).

A party seeking to remove a case to federal court bears the burden of establishing federal jurisdiction. Evans v. Walter Indus., Inc., 449 F.3d 1159, 1164 (11th Cir. 2006). Typically, we look to the complaint to establish the amount in controversy. McGee's complaint, however, does not plead a specific amount of damages. In this scenario, "the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional requirement." Williams v. Best Buy Co., 269 F.3d 1316, 1319 (11th Cir. 2001). A removing defendant may rely on its own affidavits, declarations, or other documentation to establish the amount in controversy. Pretka v. Kolter City Plaza II, Inc., 608 F.3d 744, 755 (11th Cir. 2010).

---

[6] At the outset, we affirm the District Court's judgment dismissing without prejudice McGee's facial challenge to the constitutionality of O.C.G.A. § 42-8-100(g). McGee lacks standing to seek a declaration of its invalidity because he has suffered no harm under the statute since the Superior Court granted him habeas relief.

8

Here, Sentinel submitted a declaration from its Chief Operating Officer indicating that "Sentinel has collected $5,675,639.20 in supervision fees from individuals who have been convicted of misdemeanor or ordinance violations in the State of Georgia and are presently under probation supervised by Sentinel," as well as $2,086,811.08 in electronic-monitoring fees and $183,049.00 in drug-screening fees from the same population, for a total of $7,945,499.28. Record, no. 1-4, at 1–2. McGee asserts that this declaration is insufficient because it is "too sweeping." Appellant's Br. at 15. McGee attempts to equate Sentinel's declaration with the insufficient affidavit in Miedema v. Maytag Corp., 450 F.3d 1322 (11th Cir. 2006), but this comparison fails. In Miedema, a products-liability case seeking damages for defective ovens, we held that the affidavit submitted by Maytag was insufficient to establish CAFA jurisdiction because its computation of the amount in controversy was based on the manufacturer's suggested retail price of each defective oven. Id. at 1331. Because the amount in controversy had been calculated based on an estimate rather than actual sales data, we held that Maytag had not met its burden in establishing by a preponderance of the evidence that the amount in controversy exceeded $5,000,000. Id. at 1332. By contrast, Sentinel's declaration unequivocally provides the amount of fees collected from the relevant probationers. McGee has failed to show or even suggest that these amounts are uncertain, erroneous, or otherwise based on guesswork.

9

McGee also asserts the declaration is insufficient because it does not show "exactly when the fees were collected and during what applicable statute of limitations." Appellant's Br. at 15. This argument is without merit. When determining the amount in controversy, we do not consider whether some damages claimed by the plaintiff might be precluded by a statute of limitations. As we stated in Miedema,

> The district court also found it significant that Maytag's calculation of the amount in controversy did not account for the effect of any applicable statutes of limitations. When determining the amount in controversy for jurisdictional purposes, however, courts cannot look past the complaint to the merits of a defense that has not yet been established.

450 F.3d at 1332 n.9.

Finally, McGee contends that Sentinel is a governmental entity and therefore cannot assert federal jurisdiction under CAFA. See 28 U.S.C. § 1332(d)(5)(A) (stating that CAFA jurisdiction does not apply to any class action in which "the primary defendants are States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief"). According to McGee, Sentinel is a governmental entity because the Georgia Court of Appeals has determined that private probation companies are "officer[s] of the court." Huzzie v. State, 253 Ga. App. 225, 226, 558 S.E.2d 767, 768 (Ct. App. 2002). McGee overlooks that the same court also recognized that the probation company in that case was a private entity with whom the State of Georgia

contracted for services.  Id.  Just as private attorneys are officers of the court yet could not remotely be considered governmental entities, so too does Sentinel carry out its responsibility to the court without adopting the trappings of the state.[7]

## B.

Next, McGee argues that the District Court erred in granting Sentinel summary judgment on his Georgia RICO claim on the ground that he failed to raise a genuine issue about whether Sentinel possessed the intent to commit attempted theft by deception.  We review de novo a district court's grant of summary judgment, considering all of the evidence and the inferences it may yield in the light most favorable to the nonmoving party.  Ellis v. England, 432 F.3d 1321, 1325 (11th Cir. 2005).  When the nonmoving party has the burden of proof at trial, to prevail at summary judgment the moving party has the burden of either negating an essential element of the nonmoving party's case or showing that there is no evidence to prove a fact necessary to the nonmoving party's case.  See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).  If the moving party shows an absence of evidence of a material fact, the burden of production shifts to the nonmoving party, who must identify evidence in the record or present

---

[7] McGee argues in his brief that, though Sentinel is a private company, it still qualifies as a governmental entity under 28 U.S.C. § 1332(d)(5)(A) because Sentinel is entitled to Eleventh Amendment immunity.  Whatever the merits of this argument, we decline to address it because it was not raised before the District Court.  See Bryant v. Jones, 575 F.3d 1281, 1308 (11th Cir. 2009) ("[A]bsent extraordinary circumstances, legal theories and arguments not raised squarely before the district court cannot be broached for the first time on appeal.").

"additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116 (11th Cir. 1993).

The offense of criminal attempt requires proof that the defendant acted with the intent to commit a specific crime. O.C.G.A. § 16-4-1. A civil RICO claim will lie if the plaintiff can show that the defendant committed at least two predicate acts of racketeering activity. O.C.G.A. §§ 16-14-3(8)(A). Theft by deception is a predicate act of racketeering activity under Georgia's RICO Act. O.C.G.A. § 16-14-3(9)(A)(ix). It requires the intentional use of "deceitful means or artful practice," O.C.G.A. § 16-8-3(a), with the specific intent to create a known false impression, Avery v. Chrysler Motors Corp., 214 Ga. App. 602, 606, 448 S.E.2d 737, 740 (Ct. App. 1994). Thus, to establish criminal attempt to commit theft by deception, a party must show that the defendant had the specific intent to create a known false impression. McGee, as the complaining party, would have the burden to establish Sentinel's specific intent at trial.

At summary judgment, Sentinel produced three sworn statements asserting that the March 8, 2010, and April 1, 2010, letters demanding payment and threatening McGee's arrest were sent because of a clerical error and not with the intent to deceive McGee into paying money he did not owe. According to the District Court, these statements indicated that there was an absence of evidence to

12

support an essential element of McGee's claim, to wit, that McGee had failed to present any evidence that Sentinel intended to deceive him by sending the letters. At that point, the District Court shifted the burden of production to McGee to identify evidence in the record, or present additional evidence, sufficient to create a factual issue for trial. McGee, however, produced nothing to rebut these statements—he merely denied them. On that basis the District Court found that there was "absolutely no evidence to suggest Sentinel was actually attempting to deceive Plaintiff and collect funds from him that he no longer owed." Record, no. 55, at 15.

McGee argues that no amount of testimonial evidence is sufficiently probative to shift the burden of production to him at summary judgment. He notes that, as this court has said, "[c]ases in which the underlying issue is one of motivation, intent, or some other subjective fact are particularly inappropriate for summary judgment, as are those in which the issues turn on the credibility of the affiants." Slavin v. Curry, 574 F.2d 1256, 1267 (5th Cir. 1978) (citation omitted) (overruled on other grounds by Sparks v. Duval Cnty. Ranch Co., 604 F.2d 976 (5th Cir. 1979)). McGee is correct that summary judgment based on testimonial evidence is inappropriate when the moving party is attempting to negate an element of the nonmoving party's claim; it is acceptable to consider testimonial evidence, however, when it is offered to support the moving party's contention that

13

there is no evidence in the record regarding an essential element of the nonmoving party's claim. See, e.g., Webster v. Offshore Food Serv., Inc., 434 F.2d 1191, 1194 (5th Cir. 1970) (holding that summary judgment was appropriate in light of unequivocal expert testimony offered in support of the motion, which indicated an absence of evidence in the record to support plaintiff's claim and which was not rebutted by opposing evidence). As its order granting summary judgment plainly indicates, the District Court held that the record contained "absolutely no evidence" of Sentinel's specific intent to deceive. The District Court therefore did not err in shifting the burden of production to McGee in response to Sentinel's testimonial evidence.

The only question left for us to review is whether there is any evidence in the record of Sentinel's intent to deceive—a question that goes to the peculiar nature of corporate criminal liability. McGee seeks to find Sentinel, a limited liability company, liable for criminal acts whose commission requires specific intent to deceive. That a company can specifically intend to do an act is, of course, a legal fiction—a company has no heart or soul with which to form a guilty mind. The Supreme Court tells us that a company may be held liable for specific intent offenses based on the "knowledge and intent" of its employees. N.Y. Cent. & Hudson River R.R. Co. v. United States, 212 U.S. 481, 495, 29 S. Ct. 304, 307, 53 L. Ed. 613 (1909). In other words, a company only acts or wills by virtue of its

14

employees. See Am. Thread Co. v. Rochester, 82 Ga. App. 873, 885, 62 S.E.2d 602, 609 (Ct. App. 1950) ("A corporation can only act by its agents, yet for such acts it is responsible and a simple direct statement that it committed a tortious act by the agent makes the corporation responsible."). Accordingly, in Georgia, corporate criminal liability is a product of the common law doctrine of respondeat superior. To state a claim for theft by deception against Sentinel and survive summary judgment, McGee would have had to allege, and present evidence at summary judgment, that a Sentinel employee acted with specific intent to commit theft by deception. After reviewing the record, it is apparent that McGee made no such allegation and presented no such evidence. The testimony offered by Sentinel underscored the lack of evidence in the record on this point. Without any evidence suggesting a Sentinel employee had the requisite intent to commit theft by deception, McGee could not present a genuine issue of material fact regarding Sentinel's intent. Summary judgment therefore was appropriate.

McGee argues that Sentinel's sending of the letters a month after it knew McGee had been released is itself sufficient to raise a jury question of criminal intent. Although McGee is not express in saying so, the thrust of his argument is that Sentinel, through the actions of its various agents, possessed "collective intent," which permits a jury to infer Sentinel had the specific intent to deceive McGee. Because Sentinel's attorney appeared before the Superior Court of

15

Richmond County through the conclusion of McGee's habeas proceeding, McGee

argues that the knowledge possessed by Sentinel's attorney—that the habeas

proceeding resulted in McGee's release—should be imputed to Sentinel.  McGee

likewise asserts that the act of a Sentinel employee sending the letters to McGee is

also an act of Sentinel.  Accordingly, McGee contends that Sentinel—as an

entity—was aware of McGee's release when it sent the letters to him, thus raising

an inference of specific intent to deceive, even though McGee has not alleged that

any Sentinel employee had similar criminal intent.

McGee has offered no citation to support this theory of corporate liability.

Our sister circuits have encountered litigants who have attempted to weave the

fragmented actions of various agents into corporate mens rea, but they have either

regarded this theory with skepticism[8] or have tethered it to the doctrine of

respondeat superior.[9]  Whatever the theory's status in other jurisdictions, we have

---

[8]  See Southland Sec. Corp. v. INSpire Ins. Solutions, Inc., 365 F.3d 353, 366 (5th Cir. 2004) (holding that when determining whether a statement made by a corporation was made with scienter it is "appropriate to look to the state of mind of the individual corporate official or officials who make or issue the statement . . . rather than generally to the collective knowledge of all the corporation's officers and employees"); United States v. Science Applications Int'l Corp, 626 F.3d 1257, 1274 (D.C. Cir. 2010) (expressing doubt about "the legal soundness of the 'collective intent' theory, under which . . . a corporation's specific intent to defraud can be inferred if the company's public statements contradict the accumulated 'collective knowledge' of the corporation's employees") (internal quotation marks and citation omitted); Nordstrom, Inc. v. Chubb & Son, Inc., 54 F.3d 1424, 1435 (9th Cir. 1995) ("[T]here is no case law supporting an independent 'collective scienter' theory.").

[9]  See United States v. Bank of New England, 821 F.2d 844, 856 (1st Cir. 1987) (holding that an instruction permitting the jury to infer corporate knowledge of facts through the

16

not identified anything to suggest that Georgia law recognizes it.  As a court sitting in diversity, we decline to recognize it here.

### III.

For the foregoing reasons, the judgment of the District Court is

AFFIRMED.

---

accumulation of individual knowledge was permissible where proof of the proscribed intent depended on the wrongful intent of specific employees).