**FEDERATED BANK, Plaintiff–Appellant,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, as receiver for Silverton Bank, N.A., Defendant–Appellee.**

No. 15–11946
Non–Argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

March 9, 2016.

---

1. Edwards's Motion to Supplement Reply Brief is DENIED.

Aaron M. Kappler, Bret T. Thrasher, Thompson O'Brien Kemp & Nasuti, PC, Norcross, GA, for Plaintiff–Appellant.

Joseph Brooks, Federal Deposit Insurance Corporation, Arlington, VA, Abby C. Grozine, Joseph L. Kelly, David L. Turner, Schulten Ward & Turner, LLP, Atlanta, GA, for Defendant–Appellee..

Before MARCUS, WILSON and ROSENBAUM, Circuit Judges.

PER CURIAM:

Federated Bank ("Federated") appeals from the district court's final judgment in this action that arises out of a loan participation agreement (the "Agreement") it had entered into with Silverton Bank, N.A. ("Silverton"), under which Silverton had sold to Federated a roughly one-third interest in a $3 million—plus loan for the purchase price of $1 million. When the loan matured and the entire principal amount became due, the underlying borrower J. Michael Womble ("Womble") defaulted. Five months later, Silverton failed and the FDIC was appointed as its receiver. After unsuccessful efforts to col-

lect on or otherwise address the Womble default, the FDIC sued Womble and others to recover the amount due under Womble's note and another Silverton loan. The court entered judgment in that action in favor of the FDIC in the total principal amount of $4,941,297 plus accrued interest and attorney's fees; the FDIC thereafter settled with Womble and others for $1.9 million. At that point, Federated submitted an administrative claim to the FDIC pursuant to the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), demanding a cash payment of $1 million, and asserting a "claim for money damages against [the] FDIC for post-receivership breach of contract." The FDIC denied Federated's claim.

Federated then filed this action in federal district court under FIRREA, alleging that the FDIC failed to attempt to recover on the underlying $3 million defaulted loan, and failed to provide information to Federated about the loan. The complaint contained four counts: Count I (judicial review of Federated's administrative claim); Count II (breach of contract); Count III (equitable subordination); and Count IV (attorneys' fees and litigation expenses). The district court dismissed Counts I, III, and IV and part of Count II, and ultimately granted summary judgment in favor of the FDIC on the rest of Count II. On appeal, Federated argues that the district court erred: (1) to the extent it dismissed Federated's claims because the claims qualify as administrative expenses of the FDIC, they qualify as post-receivership claims that must be paid in cash, and the district court had subject matter jurisdiction over the claims; and (2) to the extent it granted summary judgment because Federated put forth evidence that its damages resulted from its cost of performance, from charge-offs and from the FDIC's failure to liquidate collateral and

sue on the note. After careful review, we affirm.

We review *de novo* the legal conclusions underlying a district court's dismissal of claims for lack of subject matter jurisdiction, and its findings of jurisdictional facts for clear error. *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1328 (11th Cir.2013). We review *de novo* a district court's dismissal of claims for failure to state a claim. *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1336 (11th Cir.2010). We also review a district court's order granting summary judgment *de novo*, applying the same standard as the district court, and drawing all factual inferences in the light most favorable to the non-movant. *Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1236 (11th Cir.2003). Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(a). "When the nonmoving party has the burden of proof at trial, to prevail at summary judgment the moving party has the burden of either negating an essential element of the nonmoving party's case or showing that there is no evidence to prove a fact necessary to the nonmoving party's case." *McGee v. Sentinel Offender Servs., LLC*, 719 F.3d 1236, 1242 (11th Cir.2013). Finally, we review a district court's grant of a motion for reconsideration for abuse of discretion. *Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 806 (11th Cir.1993).

First, we are unpersuaded by Federated's claim that the district court erred in dismissing three of its claims for lack of subject matter jurisdiction. Except as otherwise provided in FIRREA, "no court shall have jurisdiction over—(i) any claim or action for payment from, or any action seeking a determination of rights with re-

spect to, the assets of any depository institution for which the [FDIC] has been appointed receiver ... or (ii) any claim relating to any act or omission of such institution or the [FDIC] as receiver." 12 U.S.C. § 1821(d)(13)(D). FIRREA permits suit to be filed on such claims only if the FDIC denies the claim or fails to resolve it within a specified time period. 12 U.S.C. § 1821(d)(6)(A). In *Interface Kanner, LLC v. JPMorgan Chase Bank, N.A.,* we recognized that, "for post-receivership claims—such as [Federated's] potential claim[s] against the FDIC—the court has no subject matter jurisdiction unless the claimant has exhausted the administrative remedies." 704 F.3d 927, 934 (11th Cir.2013) (quotation omitted). We also cited with approval the Third Circuit's conclusion that "the plain meaning of § 1821(d)(13)(D)(i) includes declaratory judgment actions." *Id.* (citing *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. City Sav., F.S.B.,* 28 F.3d 376, 385 (3d Cir. 1994)). Thus, the D.C. Circuit has held that a plaintiff must exhaust the exact same claim in the administrative process as the one it brings in federal court:

> Although [the plaintiffs] filed a timely proof of claim with the FDIC, their claim requested only damages for construction delays. Their claim made no mention of the declaratory relief the [plaintiffs] now seek nor could anything in the claim fairly be construed to put the FDIC on notice that the [plaintiffs] challenged its conclusion that repudiation of the loan agreement did not erase the [plaintiffs'] duty to repay the previously disbursed amount. Because the

[plaintiffs] failed to route their claim for declaratory relief through the administrative review process, section 1821(d)(13)(D)(ii) withholds judicial review of that claim.

*Westberg v. FDIC,* 741 F.3d 1301, 1308 (D.C.Cir.2014) (persuasive authority).

■ Here, the district court lacked subject matter jurisdiction over three of the claims Federated raised in its complaint. Although it had submitted to the FDIC a single claim for money damages, Federated included in its complaint claims for declaratory relief (part of Count II), equitable subordination of the FDIC's interest in settlement funds received from Womble and others due to the alleged failure of the FDIC to segregate those settlement funds (Count III), and attorneys' fees and litigation expenses (Count IV). Indeed, Federated has admitted that it never submitted to the FDIC its claims for equitable subordination and attorneys' fees and legal expenses found in Counts III and IV.[1] Nor are we persuaded by Federated's argument that these Counts are not distinct claims but only "remedies." As the D.C. Circuit said in *Westberg,* Federated's administrative claim to the FDIC "made no mention of the [equitable] relief [it] now seek[s] nor could anything in the claim fairly be construed to put the FDIC on notice that [Federated] challenged [the manner in which the FDIC handled the settlement funds]." 741 F.3d at 1308. Federated even admits that it would have been impossible for the FDIC to do anything with the Womble settlement funds until after Federated had already submitted its administrative claim. Because Fed-

---

1. As for the part of Count II that seeks a declaration that "Federated is ... reliev[ed] ... of any obligation to reimburse [the] FDIC for costs and expenses purportedly arising out of the Agreement," Federated did not challenge the district court's dismissal of this claim in its opening brief. It has thus aban-

doned any argument that it administratively exhausted this part of Count II. *See Solutia, Inc. v. McWane, Inc.,* 672 F.3d 1230, 1237 (11th Cir.2012) (holding that an argument not included in a party's opening brief is deemed abandoned).

erated did not submit these claims to the FDIC before bringing suit, it failed to exhaust its administrative remedies for these claims, and the district court could not consider them. *See Interface,* 704 F.3d at 934 ("for post-receivership claims—such as [Federated's] potential claim[s] against the FDIC—the court has 'no subject matter jurisdiction unless the claimant has exhausted the administrative remedies' "). The district court properly dismissed all of Federated's claims other than its breach-of-contract claim demanding money damages.

We also reject Federated's argument that the district court erred in dismissing for failure to state a claim Count I, which seeks a declaration that Federated would be entitled to receive—as a first-priority creditor—payment in cash for a judgment in its favor on its breach-of-contract claim. The National Depositor Preference Amendment to the Federal Deposit Insurance Act ("FDIA"), mandates that, when paying claims from receivership assets, the FDIC must follow a specified payment-priority scheme: (i) administrative expenses; (ii) deposit liabilities; (iii) other general or senior liabilities; (iv) obligations subordinated to depositors or general creditors; and (v) obligations to shareholders. 12 U.S.C. § 1821(d)(11). "[A]dministrative expenses" are defined as "those necessary expenses incurred by the receiver in liquidating or otherwise resolving the affairs of a failed insured depository institution. Such expenses shall include pre-failure and post-failure obligations that the receiver determines are necessary and appropriate to facilitate the smooth and orderly liquidation or other resolution of the institution." 12 C.F.R. § 360.4.

Here, Federated does not argue that its breach-of-contract claim under the participation agreement constitutes an administrative expense within the meaning of 12 C.F.R. § 360.4. Rather, it says that because its claim is one for breach of a contract executed or approved by the FDIC after it was appointed as receiver for Silverton, the claim qualifies as an administrative expense under § 1821(d)(20). Section 1821(d)(20) regulates the treatment of claims arising from a post-receivership breach of contract by FDIC as receiver, and provides that:

> any final and unappealable judgment for monetary damages entered against a receiver or conservator for an insured depository institution for the breach of an agreement *executed* or *approved* by such receiver or conservator after the date of its appointment shall be paid as an administrative expense of the receiver or conservator....

12 U.S.C. § 1821(d)(20) (emphases added).

However, Federated does not argue that the FDIC *executed* the Agreement for purposes of § 1821(d)(20). Federated argues only that the FDIC *approved* the Agreement because it "assumed the role as lead lender on the loan, made business decisions relating to its servicing ..., approved legal action against the borrower by filing a lawsuit in Federal Court and has collected and retained proceeds under the loan." But none of the FDIC's activities alleged by Federated constitutes approval of the Agreement. Rather, they are all collection activities related to the underlying loan. Indeed, the FDIC's activities could not constitute approval for purposes of § 1821(d)(20). As the D.C. Circuit held in *MBIA Ins. Co. v. FDIC,* "Section 1821(d)(20) ... requir[es] formal, written approval by the FDIC to qualify contract damages for priority as 'administrative expenses' under § 1821(d)(11)(A)." 708 F.3d 234, 245 (D.C.Cir.2013). "The context, where the FDIC steps into the shoes of a failed bank in emergency cir-

cumstances, shows in light of other provisions of § 1821 that Congress intended 'approved' to have a formality consistent with 'executed' and beyond 'accep[tance],' and that a narrow meaning is required under the depositor preference scheme." *Id.* at 244. Accordingly, "[a] formal written sanction thus serves an important statutory purpose by limiting the contracts that are given priority." *Id.*

Federated attempts to distinguish *MBIA,* arguing that it involved an agreement that had been repudiated and this case does not. But that is not a basis for distinguishing this case. In *MBIA,* the court explained the need for a formal writing even when a non-repudiated contract continues in force post-receivership:

> [A] writing protects all interested parties, distinguishing 'approved' contracts from on-going agreements assumed and non-repudiated. Under MBIA's broad interpretation of 'approved,' mere assumption, oral agreement, or partial performance would accord priority status to any damages stemming from a non-repudiated contract. . . .'

*MBIA,* 708 F.3d at 245. We agree with the *MBIA* Court and reject the argument Federated makes here.

Federated also argues—for the first time on appeal—that written approval of the Agreement "may very well exist," but that "the trial court erred in ruling on the Motion to Dismiss without allowing Federated to seek complete discovery on these issues." However, this argument was waived because Federated did not raise it before the district court. *Millennium Partners, L.P. v. Colmar Storage, LLC,* 494 F.3d 1293, 1304 (11th Cir.2007) ("Arguments raised for the first time on appeal are not properly before this Court.") (quotation omitted). Further, nowhere in its complaint does Federated allege that the FDIC approved the Agreement in writing, and notably, Federated has not put forth any evidence suggesting that the FDIC approved the Agreement in writing, even though discovery is now completed.

Federated next points to an internal FDIC claims manual for the proposition that it has the right to be paid in cash on its claim for post-receivership breach of the Agreement by the FDIC as receiver. However, it is undisputed that the claims manual it relies upon had been rescinded and replaced by the FDIC nearly a year *before* Federated filed its administrative claim and that the claims manual that superseded it includes no provision like the one Federated relies upon from the rescinded claims manual. In any event, internal agency manuals like the FDIC's claims manual do not provide an independent basis for liability. Rather, as the Supreme Court and this Court have held, such manuals are solely for the use of agency employees, do not have the force of law, and do not provide any substantive rights to persons or entities who interact with federal agencies. *See Schweiker v. Hansen,* 450 U.S. 785, 789, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981) (Social Security Administration ("SSA") Claims Manual is a "handbook for internal use by thousands of SSA employees" that "has no legal force, and . . . does not bind the SSA."); *United States v. Harvey,* 659 F.2d 62, 63, 66 (5th Cir. Unit B 1981) (observing that a Veterans Administration loan servicing manual was "internal agency publication issued to employees engaged in loan servicing operations to provide procedural information and policy guidelines" and holding "the manual does not create substantive rights in the mortgagor enforceable in federal court").[2]

---

**2.** *See Stein v. Reynolds Sec., Inc.,* 667 F.2d 33, 34 (11th Cir.1982) (adopting as binding all

We also find no merit to Federated's argument that the district court erred in granting summary judgment to dispose of its breach-of-contract claim. "The elements for a breach of contract claim in Georgia are the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken." *Norton v. Budget Rent A Car Sys., Inc.*, 307 Ga.App. 501, 705 S.E.2d 305, 306 (2010) (quotation omitted). When suing for damages in Georgia, a plaintiff "has the burden of proof of showing the amount of loss in a manner in which the jury ... can calculate the amount of the loss with a reasonable degree of certainty. An allowance for damages cannot be based on guess work." *Big Builder, Inc. v. Evans*, 126 Ga.App. 457, 191 S.E.2d 290, 291 (1972). Thus, a party's "fail[ure] to perform ... standing alone does not furnish a basis upon which the amount of the loss can be calculated." *Id.* In other words, "damages awarded for breach of contract cannot be vague, speculative, or uncertain ... and must be traced solely to the breach of contract." *Turner Broadcasting Sys., Inc. v. McDavid*, 303 Ga.App. 593, 693 S.E.2d 873, 886 (2010). While proximate cause is usually a jury question in Georgia, it may be determined by the courts "in plain and undisputed cases." *Sanders v. Lull Int'l, Inc.*, 411 F.3d 1266, 1271 (11th Cir.2005) (quotation omitted).

██ Here, Federated claims that the FDIC breached the Agreement in two ways: (1) it failed to provide Federated with sufficient information about the Womble note, the potential for default, and the FDIC's collection efforts; and (2) it failed to liquidate the collateral securing the note—approximately 44,000 shares of stock in FMCB Holdings, Inc.—or to act quickly enough to initiate a collection action against the borrower. Federated also describes the damages it suffered: (1) the

price it paid for its participation interest in the Womble note; and (2) the amounts of the Womble loan it was forced to "charge off" (i.e., report as a lost asset of the bank). Federated has failed, however, to put forth evidence of how the FDIC's alleged breaches caused the harm Federated suffered.

As for the first breach, the district court concluded that "Federated has offered no evidence at all on how the FDIC's alleged failure to provide required information caused any damage suffered by Federated." For example, Federated offered no evidence that it would have taken different action had it been aware of the information the FDIC allegedly failed to provide it. *See Sun American Bank v. Fairfield Fin. Servs., Inc.*, 690 F.Supp.2d 1342, 1368 (M.D.Ga.2010) ("Precise legal damages [from a breach of contract similar to the one alleged here] would be impossible to calculate because such calculation would require speculation into what Sun American would have done with the information Fairfield was obligated to disclose.... It might have made good decisions, or it might have made bad decisions.... It is impossible to say.").

As for the second breach, the only evidence suggesting that there was a market for the FMCB shares was a December 4, 2009 letter from FMCB Holdings. But as the district court concluded, that letter is "an insufficient basis upon which the jury could determine what damages might have been suffered by Federated due to the FDIC's allegedly commercially unreasonable delay in initiating collection activities." In fact, the letter itself provides that there is no "public market" for FMCB Holdings, Inc.'s shares. Furthermore, the only share sale referenced in the letter was for 3,200 shares. Without an available public market, Federated cannot point to *one* sale as the basis for determining that

decisions issued by a Unit B panel of the former Fifth Circuit).

$35 per share was a realistically possible price point. The collateral here was over 44,000 shares, a significantly higher number, particularly when discussing a stock for which there is already no public market. Federated provided no evidence from which a reasonable jury could conclude that a sale of such magnitude was even possible at any price.

Because it is plain that there is no evidence from which a reasonable jury could conclude without speculation that the alleged actions or inactions of the FDIC caused Federated to suffer any damages under the Agreement, the district court did not err in granting summary judgment in favor of the FDIC on Federated's breach-of-contract claim. Nor, moreover, did the district court abuse its discretion by granting the FDIC's motion for reconsideration of the initial denial of the FDIC's summary judgment motion. "[B]ecause the order [denying summary judgment] was interlocutory, 'the court at any time before final decree [could] modify or rescind it.'" *Bon Air Hotel, Inc. v. Time, Inc.*, 426 F.2d 858, 862 (5th Cir. 1970) (quoting *John Simmons Co. v. Grier Bros. Co.*, 258 U.S. 82, 88, 42 S.Ct. 196, 66 L.Ed. 475 (1922)),[3] *abrogated on other grounds by Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir.1994); *see also Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1315 (11th Cir.2000) (noting that "the district court has plenary power over [interlocutory orders] and this power to reconsider, revise, alter or amend the interlocutory order is not subject to the limitations of Rule 59") (quotation omitted).

**AFFIRMED.**

**3.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), we adopted as binding precedent all Fifth Circuit decisions issued before October 1, 1981.